## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 732 - 1,2 | **DATE** | 4/1/2004 |
| **CASE TITLE** | USA vs. Eduardo Favela, Aurora Alaya | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion and order, defendant Alaya's motion to suppress identification as evidence is granted. Defendant Favela's motion to suppress show up identification as evidence is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | |
|---|---|---|
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

MF — courtroom deputy's initials

Date/time received in central Clerk's Office

APR 02 2004

number of notices / date docketed / docketing deputy initials / date mailed notice / mailing deputy initials

Document Number: 100

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
APR 2 2004

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | No: 03 CR 732 |
| | ) | |
| EDUARDO FAVELA, JR. and | ) | Judge John W. Darrah |
| AURORA ALAYA | ) | |

## MEMORANDUM OPINION AND ORDER

The United States of America (the "Government") brought a one-count indictment against Defendants, Eduardo Favela, Jr. and Aurora Alaya, for conspiring to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846 and 841(a)(1). Presently before the Court are Defendants' motions to suppress identifications as evidence. For the following reasons, those motions are granted as to Defendant Alaya but denied as to Defendant Favela, Jr.

## BACKGROUND

The facts, for the purposes of this motion, are as follows. On July 19, 2000, Officer Fernando Carvajal was assigned as part of an undercover surveillance team to a controlled marijuana delivery with the Drug Enforcement Agency. (Tr. at 4). In the early evening hours of that day, Officer Carvajal, from his vehicle, observed a confidential source meet with a woman in the area of 126th and Old Western Avenue in Blue Island, Illinois, from a distance of two blocks away. (Tr. at 4, 55).

/02

Officer Carvajal saw the confidential source give the woman a set of keys to the van the confidential source had been driving, and he then saw the woman drive away in the van.[1] (Tr. at 25-26). From his vantage point, Officer Carvajal saw the woman's face and "pretty much her body description" "from a long view." He also observed that the woman "was short and kind of chubby" with "light brown hair." (Tr. at 6, 26). However, Officer Carvajal failed to recall what the woman was wearing. (Tr. at 26). Moreover, when the female drove away with the van on July 19, 2000, Officer Carvajal failed to take notes or write a report of this observation or any description of the female. (Tr. at 26).

Officer Carvajal then followed the van and another vehicle that was following the van to a nearby house. (Tr. at 6-7). While Officer Carvajal was following these vehicles, he was never closer than two blocks away. (Tr. at 56). When the vehicles reached the house, Officer Carvajal drove past the house's garage and observed the van being backed into the garage's northernmost bay. (Tr. at 7, 50).

A few minutes later, Officer Carvajal made a second pass by the garage and saw "the van inside the garage, and standing next to the van was the female that drove the van there, with an older male Hispanic in the rear of the van." (Tr. at 7-8, 28-30). The older Hispanic male was in his late forties or early fifties. (Tr. at 20). The female was standing about a foot away from the van on the driver's side; Officer Carvajal had a side view of the female "looking behind like

---

[1]Officer Carvajal's testimony in this regard was impeached. During his May 29, 2003 interview with Special Agent Joseph Moussiaux, Officer Carvajal told Special Agent Moussiaux that he had **heard** the unknown female accept the keys and drive away in the van over the radio. (Tr. at 68-69) (emphasis added). However, at the suppression hearing, Officer Carvajal testified that he actually observed the unknown female accept the keys and drive away in the van. (Tr. at 5, 6, 25-26, 55, 56).

2

towards the van." (Tr. at 30). The older Hispanic male was standing in the rear of the van unloading a box from inside the van. (Tr. at 7-8, 28-30).

After Officer Carvajal drove past the house a second time, he established a surveillance point in a wooded prairie across the street from the house. (Tr. at 9, 51). Officer Carvajal did not use binoculars or cameras to improve his observation of the events occurring in the garage. (Tr. at 92).

At some points, Officer Carvajal was about thirty-five to forty yards away from the house while standing in the prairie. (Tr. at 11, 32). At different moments, Officer Carvajal was about ten to twenty yards inside the wooded prairie. (Tr. at 33). Officer Carvajal was about fifty yards from the garage where the van was located. (Tr. at 52).

From his vantage point inside the prairie, Office Carvajal was able to see a garage bay next to the one where the van was parked. (Tr. at 13). He was also able to see "a gangway area that leads to the side of the house" and "the whole northeast of the house." (Tr. at 13). However, Officer Carvajal could not see anyone at the rear of the van unloading the van inside the garage from his position in the prairie. (Tr. at 53).

While Officer Carvajal was inside the prairie looking at the house, he saw a younger Hispanic male who was approximately thirty years old "coming out from that gangway area and going into the house carrying two boxes, two cardboard boxes." (Tr. at 13). About thirty minutes later, Officer Carvajal observed the same person he saw carrying the two cardboard boxes get into a "SUV-type vehicle" and drive "westbound on the street that's just north of the house." (Tr. at 15). About ten minutes later, Officer Carvajal heard, over his police radio, that Blue Island Police Department officers stopped the SUV and identified the driver. (Tr. at 17).

About twenty minutes later, Officer Carvajal saw the same driver return to the house in the SUV. (Tr. at 17).

Later that evening, Officer Carvajal saw the older Hispanic male, who Officer Carvajal had previously observed unloading boxes from the rear of the van, walking back and forth and looking around while watering the grass. (Tr. at 19). By the time Officer Carvajal saw this man, it was "already starting to get dark." (Tr. at 21).

Officer Carvajal remained in the prairie until law enforcement authorities executed a search warrant at the house. (Tr. at 36). Officer Carvajal did not see any of these three people – the female he saw driving the van, the older Hispanic male, or the younger Hispanic male – again.

On May 29, 2003, Officer Carvajal was interviewed by Drug Enforcement Agency Special Agent Joseph Moussiaux. (Tr. at 66). During this interview, Officer Carvajal was not shown any pictures of the individuals he allegedly observed on July 19, 2000. (Tr. at 42). Moreover, Special Agent Moussiaux's report of this interview fails to show that Officer Carvajal provided a description of the female. (Tr. at 81-82). Special Agent Moussiaux's report also contains an account by Officer Carvajal inconsistent with his testimony regarding his first observation of the female at 126th Street and Old Western Avenue, as set out in the footnote above.

On or around November 12, 2003, Special Agent Moussiaux showed Officer Carvajal photographs of an older Hispanic male, Eduardo Favela, Sr.; a younger Hispanic male, Defendant Eduardo Favela, Jr.; and a female, Defendant Aurora Alaya. (Tr. at 41, 78-79, 91;

4

Gov't Resp., Ex. E). Before this meeting, Officer Carvajal was never shown any pictures of the people he allegedly observed on July 19, 2000. (Tr. at 72).

These pictures were three inches by six inches and did not depict the height of the individuals in the pictures. (Tr. at 43-44; Gov't Resp., Ex. E). When Officer Carvajal was shown these pictures, he "knew that these were the three individuals that were involved with the activity" that he observed on July 19, 2000. (Tr. at 91). Prior to November 12, 2003, Officer Carvajal did not give a written report or description detailing the height, weight, or age of the three subjects he observed on July 19, 2000. (Tr. at 42).

## **ANALYSIS**

"A show-up 'occurs when only one suspect is presented to the witness.'" *United States v. Funches*, 84 F.3d 249, 254 (7th Cir. 1996) (citations omitted) (*Funches*). A defendant must satisfy two conditions to prevail on a due process claim and suppress a show-up identification. First, a defendant must demonstrate "that the challenged show-up identification procedure was unreasonably suggestive." *United States v. Newman*, 144 F.3d 531, 535 (7th Cir. 1998) (*Newman*). Second, a defendant must demonstrate that "the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedures." *Funches*, 84 F.3d at 253. If a pre-trial identification is inadmissible, a trial identification by the witness may then be tainted. *See Cossel v. Miller*, 229 F.3d 649, 656 (7th Cir. 2000).

Defendants argue that the pictures shown to Officer Carvajal constituted a show-up and were, thus, unreasonably suggestive. An identification procedure is impermissibly suggestive

5

only where it creates "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Show-up identifications are "inherently suggestive" and should only be used in "extraordinary circumstances." *Newman*, 144 F.3d at 535.

The Government contends that these pictures were not shown to Officer Carvajal to identify suspects but, rather, to determine if the people depicted in the photographs were the same ones Officer Carvajal observed more than three years earlier on July 19, 2000. This procedure used in this case meets the definition of a show-up for the purposes of identification. Moreover, the Government has failed to show that any extraordinary circumstances exist that required the use of this show-up. Accordingly, the identification procedure used with Officer Carvajal in this case was unreasonably suggestive.

Defendants then "must also establish that the identification is unreliable under the totality of the circumstances." *Newman*, 144 F.3d at 535. If Officer Carvajal's identification of Defendants possesses sufficient indicia of reliability, then the identification is admissible, despite the suggestive show-up procedure used by the Government. *See Newman*, 144 F.3d at 536. Five factors guide a court's inquiry in determining whether the identification was sufficiently reliable: (1) whether the witness had an opportunity to view the defendant at the time of the crime, (2) the accuracy of the witness's prior description of the defendant, (3) the length of time between the crime and the identification, (4) the level of certainty demonstrated by the witness at the time of the identification, and (5) the witness's degree of attention. *Newman*, 144 F.3d at 536.

Officer Carvajal's opportunity to see the female involved was extremely limited. When Officer Carvajal first observed the female he later identified as Alaya, he was two blocks away. He remained two blocks away from her as he followed the van to the house and garage in

6

question. When he passed the garage and observed a female, Officer Carvajal only saw, for a few seconds, a side view of a female as she was looking to the back of the van.

Officer Carvajal's testimony regarding the prior description of this female was incomplete. He described her as short and kind of chubby with long brown hair, and he could not describe the clothing she wore.

Officer Carvajal expressed certainty that the female he identified from the picture he saw was the female he observed on July 19, 2000; and he is a police officer trained to pay attention to detail. *Manson v. Brathwaite*, 432 U.S. 98, 115 (1977). But, considering the totality of the circumstances, particularly the two limited views he had of the female from (1) two blocks away and (2) later, as he drove past her, Defendant Alaya has established there is insufficient indicia of reliability to permit identification by Officer Carvajal of Alaya during trial.

However, as to Defendant Favela, Jr., Officer Carvajal was able to see him on several occasions from the prairie. First, Officer Carvajal saw a thirty-year-old Hispanic male coming out of the gangway area and going into the house. Later on, Officer Carvajal observed this man get into an SUV. Thirty minutes later, Officer Carvajal saw the same man return to the house. There was still sufficient day-light outside at the times Officer Carvajal made these observations of Defendant Favela, Jr.

Considering the facts set out above and the factors set out above used to determine the reliability of the pre-show-up identification, including the opportunities Officer Carvajal had to observe Defendant Favela, Jr., there exists sufficient indicia of reliability that Officer Carvajal's identification of Favela, Jr. and Officer Carvajal's in-court identification of Favela, Jr. are found to be admissible.

## CONCLUSION

For the foregoing reasons, Defendant Ayala's Motion to Suppress Identification as Evidence is granted, and Defendant Favela, Jr.'s Motion to Suppress Show Up Identification Evidence is denied. .

Dated: April 1, 2004

JOHN W. DARRAH
United States District Judge