# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 732 - 1,2 | **DATE** | 11/22/2004 |
| **CASE TITLE** | USA vs. Eduardo Favela, Aurora Alaya | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the identification of Alaya by Officer Guerra during trial as the person driving the van containing marijuana should have been suppressed. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| No notices required, advised in open court. | | | Document Number |
|---|---|---|---|
| No notices required. | | | |
| Notices mailed by judge's staff. | | NOV 29 2004 | |
| Notified counsel by telephone. | | date docketed | |
| Docketing to mail notices. | | | |
| Mail AO 450 form. | | docketing deputy initials | |
| Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| MF courtroom deputy's initials | 2004 NOV 29 PM 2:31 | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No: 03 CR 732 |
| | ) | |
| EDUARDO FAVELA, JR. and | ) | Judge John W. Darrah |
| AURORA ALAYA | ) | |

## MEMORANDUM OPINION AND ORDER

The United States of America (the "Government") brought a one-count indictment against Defendants, Eduardo Favela, Jr. and Aurora Alaya, for conspiring to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1). On April 1, 2004, after a trial by jury, Defendants were found guilty. Defendant Alaya filed a post-trial motion raising, *inter alia*, a challenge to a specific in-court identification of Alaya made at trial by Drug Enforcement Agency Task Force Officer Roberto Guerra. This motion was granted in part, and a hearing was ordered, pursuant to *United States v. Ienco*, 92 F.3d 564, 567-69 (7th Cir. 1996), to determine whether a particular identification of Alaya made by Officer Guerra at trial should have been suppressed.[1]

---

[1] In a written opinion dated August 26, 2004, the Court found that the trial identification of Alaya, at the time she allegedly drove a van containing marijuana, by Officer Guerra may have been unconstitutionally inadmissible. No evidentiary hearing had been held, although previously requested by Alaya, because the parties had stipulated that Officer Guerra would testify consistently with his reports which did not contain any reference to this identification. *United States v. Favela*, No. 03 CR 732, 2004 WL 2011395 (N.D. Ill. Aug. 26, 2004).

The matter now comes before the Court after an evidentiary hearing for ruling on the issue of the suppression of this particular identification of Defendant Alaya by Officer Guerra.[2]

## BACKGROUND

Alaya was indicted for conspiring to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1), for her involvement with a marijuana delivery on July 19, 2000. On November 6, 2000, several months after the date of the charged offense, Officer Guerra prepared a report concerning a controlled delivery of marijuana which was in the back of a van driven by a confidential informant to a parking lot. Officer Guerra was assigned to monitor an electronic recording device worn by the confidential informant driver. In the report, Officer Guerra stated that while monitoring the recording device, he heard a female obtain the keys to the van. Nothing in the report stated that Officer Guerra observed a female drive away in a van containing marijuana, and no description of the female was provided. Officer Guerra's report incorrectly stated that these events took place on July 17, 2000.

On November 13, 2003, three years and four months after the date of the charged offense, Officer Guerra was interviewed by Special Agent Joseph Moussiaux in the presence of Assistant United States Attorney Kevin Rosenberg concerning the controlled delivery of marijuana. According to Special Agent Moussiaux's report of that interview, Officer Guerra again stated that while monitoring the electronic recording device, he heard a female obtain the keys to the van containing marijuana. Officer Guerra also stated that he was conducting surveillance of the

---

[2] The parties agree that the Court may also consider all the evidence produced at trial, as well as the evidence adduced during the October 6, 2004 evidentiary hearing.

van. However, nothing in the report stated that Officer Guerra observed a female drive away in a van containing marijuana, and no description of the female then driving the van was provided by Officer Guerra to Agent Moussiaux.

Agent Moussiaux's report further stated that Officer Guerra later that day observed a female return to the van to a drop-off point. The van did not contain any marijuana. Officer Guerra then followed the female as she entered her own vehicle and drove to her apartment. Officer Guerra took pictures of the female. He identified this female, who drove the empty van, as Alaya when shown a single, color photograph of Alaya by Special Agent Moussiaux during the interview.

During the November 13, 2003 interview with Special Agent Moussiaux and Assistant United States Attorney Rosenberg, Officer Guerra was afforded an opportunity to correct any errors in his November 6, 2000 report. Officer Guerra only corrected his November 6, 2000 report by stating that the events occurred on July 19, 2000, instead of July 17, 2000, as previously written.

At trial, Officer Guerra testified that he was an experienced narcotics officer with specialized training. Officer Guerra then testified that on July 19, 2000, he was responsible for monitoring the electronic recording device, he monitored the recording device while in another vehicle and he heard an exchange of keys on the electronic recording device he was monitoring. But Officer Guerra then testified that he observed the female driving the van containing marijuana while he was driving southbound on Western Avenue in Blue Island, Illinois, and that this female had black hair and was wearing a pink top. Officer Guerra identified the female driving the van with marijuana in court as Alaya.

3

Other trial evidence established that the female and van, when purportedly observed by Officer Guerra, were located in a small parking lot with approximately seven parking spots on Western Avenue that was shaded by approximately four to five trees, (Gov't Ex. 14); that the stretch of Western Avenue in Blue Island has dense traffic, and the speed limit is twenty-five miles per hour. (Trial Tr. at 150-152, 203).

Officer Guerra explained that the date discrepancy was corrected in Agent Moussiaux's report, but the omission of his (Officer Guerra's) identification of Alaya in his report and statement to Agent Moussiaux were not corrected because: (1) "Well, I'm a human being, and there's things that you remember when you don't write down, and you don't write everything down," (Tr. at 99); (2) "The bottom line, the biggest mistake I made was I forgot to put in the report that I saw her backing out in the vehicle, and the dates were screwed up. Messed up. Sorry." (Tr. at 129).

At the later evidentiary hearing, Officer Guerra offered testimony generally consistent with his trial testimony identifying Alaya as driving the van with marijuana. Specifically, that on July 19, 2000 he saw Alaya with a black ponytail and wearing a pink top in the driver's part of the van containing marijuana while he (Officer Guerra) was driving southbound on Western Avenue in Blue Island, Illinois, and the van was in the parking lot.

Officer Guerra was again questioned, at the hearing, as to why the date discrepancy was corrected in Agent Moussiaux's report, but the discrepancy regarding the omission of the identification of Alaya from his report was not. This time, Officer Guerra's testimony, contrary to his trial testimony, was that the reports were intended to detail only monitored conversations and not his observations from surveillance.

4

## ANALYSIS

"A show-up 'occurs when only one suspect is presented to the witness.'" *United States v. Funches*, 84 F.3d 249, 254 (7th Cir. 1996) (citations omitted) (*Funches*). A defendant must satisfy two conditions to prevail on a due process claim and suppress a show-up identification. First, a defendant must demonstrate "that the challenged show-up identification procedure was unreasonably suggestive." *United States v. Newman*, 144 F.3d 531, 535 (7th Cir. 1998) (*Newman*). Second, a defendant must demonstrate that "the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedures." *Funches*, 84 F.3d at 253. If a pre-trial identification is inadmissible, a trial identification by the witness may then be tainted. *See Cossel v. Miller*, 229 F.3d 649, 656 (7th Cir. 2000).

Here, it has already been determined that the single, color photograph as presented to the law enforcement officers in this matter more than three years after the offense constituted an impermissible show-up. *United States v. Favela*, No. 03 CR 732, 2004 WL 726123, at *3 (N.D. Ill. Apr. 2, 2004).

Defendants "must also establish that the identification is unreliable under the totality of the circumstances." *Newman*, 144 F.3d at 535. If Officer Guerra's identification of Defendants possesses sufficient indicia of reliability, then the identification is admissible, despite the suggestive show-up procedure used by the Government. *See Newman*, 144 F.3d at 536. Five factors guide a court's inquiry in determining whether the identification was sufficiently reliable: (1) whether the witness had an opportunity to view the defendant at the time of the crime, (2) the accuracy of the witness's prior description of the defendant, (3) the length of time between the

crime and the identification, (4) the level of certainty demonstrated by the witness at the time of the identification, and (5) the witness's degree of attention. *Newman*, 144 F.3d at 536.

According to testimony and evidence regarding the first factor, Officer Guerra's opportunity to view the female while she was driving a van containing marijuana, he had a limited view of the female. His view was at least partially obscured by trees. Officer Guerra was monitoring an electronic recording device while driving a vehicle in the flow of traffic on a densely traveled street southbound at twenty-five miles per hour. At this time, he claims to have made his observation of Alaya while in a van at a right angle to his left on the east side of the street. Moreover, Officer Guerra's testimony regarding his opportunity to view Alaya, his level of attention, and the level of certainty at the time of his identification render his identification of Alaya unreliable. Although Officer Guerra was an experienced narcotics officer with specialized training, neither of his reports refers to any observation by Officer Guerra of a female with a pink top driving the van containing marijuana. Officer Guerra later had an opportunity to correct this material omission, yet he failed to do so – despite correcting an error concerning the date of the controlled marijuana delivery. His purported recollection of this omitted fact, the crucial identification of Alaya as the person in possession of a large amount of marijuana in the van, three years and nine months later for the first time at trial is not reliable.

Nor does Officer Guerra's explanation for these omissions further contribute to this assessment. At trial, Officer Guerra stated that the omission was a mistake. At the evidentiary hearing, though, Officer Guerra stated that he intended his reports to only detail monitored conversations. However, Agent Moussiaux's report also stated that Officer Guerra said he was conducting surveillance of the van, as well.

6

Officer Guerra's testimony regarding the description of the driver was incomplete: a female wearing a pink top, and he could provide no other details of the female's appearance. As noted above, he gave no description of the female in his reports prior to being shown a photo of Alaya almost four months after the occurrence. Officer Guerra's overall testimony in regards to his identification was generally not credible.

Considering the totality of the circumstances, Defendant Alaya has established there is insufficient indicia of reliability to permit identification at trial by Officer Guerra of Alaya as the person driving the van containing marijuana.

## CONCLUSION

For the foregoing reasons, the identification of Alaya by Officer Guerra during trial as the person driving the van containing marijuana should have been suppressed.

Dated: November 22, 2004

JOHN W. DARRAH
United States District Judge